# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STUART F. McCOLL, a married man dealing with his separate property, | No. 46728-3-II |
| Appellant, | |
| v. | |
| GEOFFREY ANDERSON, a married man dealing with his separate property; ADMINISTRATOR OF THE CLALLAM COUNTY DEPARTMENT OF COMMUNITY DEVELOPMENT, currently Sheila Miller;[1] and PROSECUTOR OF CLALLAM COUNTY, currently Mark Nichols, | UNPUBLISHED OPINION |
| Respondents. | |

MELNICK, J. — Stuart McColl appeals Clallam County Superior Court's orders granting summary judgment in Clallam County's and Geoffrey Anderson's favor. McColl argues that the court erred by dismissing his writ of mandamus claim because the prosecutor had a duty to act and the court certified that McColl had no other administrative or legal remedy. He further argues that

---

[1] The administrator of the Clallam County Department of Community Development is currently Mary Ellen Winborn.

the court erred by dismissing his lawsuit for damages because he has a property right to a view.[2]

Any additional issues were not sufficiently briefed, thus we do not consider them. Anderson seeks

attorney fees on appeal.[3] Because no genuine issue of material fact existed and Clallam County

and Anderson were entitled to judgment as a matter of law, and to the extent arguments were made

under the Shoreline Management Act of 1971 (SMA) we award attorney fees and affirm the trial

court.

## FACTS

McColl and Anderson are neighbors who live on Lake Sutherland in Clallam County.

Anderson purchased his property in 1978 and it became his full-time residence in the 1990s.

McColl took ownership of his property in 2012.

When Anderson acquired his property, it included a dock and an old boathouse. In 1983,

he applied for and obtained a permit from Clallam County to rebuild the dock and boathouse. In

2008, Anderson drove pilings that extended the boathouse and adjacent dock six feet towards the

water. Anderson took this action to accommodate a drop in water level following a severe storm

---

[2] Based on our reading of the brief, McColl raises the above-stated issues. We find support for this interpretation based on McColl's arguments when the trial court heard the summary judgment motions. In McColl's summary judgment motion, he listed eight issues for the trial court to consider. But at the motion hearing, McColl stated,

> There are three things that matter to me. It is unacceptable to block my view. It's not acceptable. There's a bunch of junk in the water right next to my house. It is not acceptable. And having a deck where it completely compromises my house, its privacy I don't want a deck sitting in front of me. That annoys me and bothers me. Those are the three things that matter to me.

Report of Proceedings (RP) at 18-19.

[3] In addition to attorney fees, Anderson requests in his brief that we dismiss the appeal. He previously filed a formal motion to dismiss for the same reasons that a commissioner of this court denied. We also deny his motion to dismiss.

in 2007. Anderson also installed a beam inside the boathouse that raised its height seven inches. Anderson stated that "the word among property owners around the lake was that the County considered this to be an emergency situation and [property owners] could go ahead and take care of any necessary repairs." Clerk's Papers (CP) at 203. Anderson did not acquire a permit for the 2008 additions.

By 2012, Anderson had installed stairs that connected the adjacent dock to the top of the boathouse. He installed railings on top of the boathouse and used it as a deck. Per Anderson, of the approximately 20 boathouses on the lake, almost all of them used the roof for sunbathing and jumping into the lake. In 2012, Anderson and his family began to occasionally use a portable bamboo privacy screen on top of the boathouse. From McColl's second story deck, this screen, when used, partially obscured McColl's view of the lake. Anderson also stored two "floats"[4] beside the boathouse, on the side closest to McColl's house: one for dock repairs and one for swimming in deeper water and storing water toys. Per McColl, the floats were not there when he purchased his property.

In June 2013, McColl filed a complaint against Anderson seeking declaratory and injunctive relief for violations of the SMA, the Clallam County Shoreline Management Program, and additional code violations related to Anderson's boathouse, as well as a writ of mandamus for the Clallam County prosecutor's office. In late 2013, McColl sent a letter to Clallam County Department of Community Development (the Department) regarding the dock. Then, in January 2014, McColl amended his complaint to add the Department and the Clallam County Prosecutor (Clallam County) as defendants. McColl sought a writ of mandamus for the Department and the

---

[4] The "floats" described by the parties are small, floating docks or platforms.

prosecutor, as well as damages for "degradation of view, property value, continued nuisance, and unfettered safe access to the lake." CP at 98.

In March 2014, McColl again amended the complaint and added a request for injunctive relief based on public nuisance.

McColl moved for summary judgment and both Clallam County and Anderson cross-moved for summary judgment. On September 5, the trial court heard argument on McColl's and Clallam County's motions. It granted Clallam County's motion. Shortly thereafter, McColl filed a motion for reconsideration that the trial court denied.

On September 26, the trial court heard Anderson's and McColl's summary judgment motions. It orally granted Anderson's motion and denied McColl's. On October 2, McColl filed a notice of appeal, which we determined was premature. At McColl's request, it was held for 60 days. Then, on October 30, the trial court signed the judgment and order granting summary judgment to Anderson and awarding Anderson partial attorney's fees and costs on the Shoreline Management Act claim. The trial court denied McColl's motion. McColl filed a motion to reconsider and on November 17, the trial court entered its final order denying the motion for reconsideration. McColl appeals from both orders granting summary judgment.

ANALYSIS

I.    STANDARD OF REVIEW

We review an order for summary judgment de novo, engaging in the same inquiry as the trial court. *Jones v. Allstate Ins. Co*., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe

all facts and their reasonable inferences in the light most favorable to the nonmoving party. *Jones*, 146 Wn.2d at 300.

A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516. If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that a material fact remains in dispute. *Atherton*, 115 Wn.2d at 516. If the nonmoving party fails to demonstrate that a material fact remains in dispute, and reasonable persons could reach but one conclusion from all the evidence, then summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

## II. WRIT OF MANDAMUS

McColl contends that the trial court erred by denying him a writ of mandamus. We disagree.

A writ of mandamus is an extraordinary remedy. *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994). Mandamus requires the satisfaction of three elements: (1) the party subject to the writ is under a clear duty to act; (2) the applicant has no plain, speedy and adequate remedy in the ordinary course of law; and (3) the applicant is beneficially interested. RCW 7.16.170; RCW 7.16.160; *Eugster v. City of Spokane*, 118 Wn. App. 383, 402, 76 P.3d 741 (2003). At the hearing for cross-motions on summary judgment between McColl and Clallam County, the trial court

found that McColl failed to establish the County was under a clear duty to act. We agree with the

trial court.[5]

The statutes under which McColl seeks relief are in the Shoreline Management Act. Ch.

90.58 RCW.[6] The language over which McColl and Clallam County disagree is as follows:

> Except as provided in RCW 43.05.060 through 43.05.080 and 43.05.150, the attorney general or the attorney for the local government shall bring such injunctive, declaratory, or other actions as are necessary to ensure that no uses are made of the shorelines of the state in conflict with the provisions and programs of this chapter, and to otherwise enforce the provisions of this chapter.

RCW 90.58.210(1). Furthermore, McColl quotes a section from the relevant chapter of the

Clallam County Code that addresses Clallam County's Shoreline Management Program. Regarding enforcement, the code states:

> The Clallam County Prosecuting Attorney shall bring such injunctive, declaratory, or other actions as are necessary to ensure that no uses are made of the shorelines of the County in conflict with the provisions and programs of this chapter or the Shoreline Management Act of 1971, and to otherwise enforce the provisions of this chapter and the Shoreline Management Act of 1971.

Clallam County Code (CCC) 35.01.130(2).

McColl argues that the word "shall" in the above statute and ordinance *requires* the Clallam

County Prosecutor to prosecute. We review questions of statutory construction de novo, looking

---

[5] Although McColl argued to the trial court that the Shoreline Management Act creates a clear duty to act for both the county prosecutor and the Department, on appeal, McColl only addresses the prosecutor's duty to act. Therefore, we only address the prosecutor's duty to act. RAP 10.3(a); *State v. Olson*, 126 Wn.2d 315, 320-21, 893 P.2d 629 (1995).

[6] The Shoreline Management Act applies to all the counties of Washington State. RCW 90.58.030. Under the Act, each city and county must prepare and adopt a shoreline master program tailored to the specific geographic, economic, and environmental needs of the community. RCW 90.58.080.

to the statute's plain language in order to give effect to legislative intent. *Asche v. Bloomquist*, 132 Wn. App. 784, 790, 133 P.3d 475 (2006). "When faced with an unambiguous statute, we derive the legislature's intent from the plain language alone." *Asche*, 132 Wn. App. at 790. Courts must generally give words in a statute their plain and ordinary meaning. *Erection Co. v. Dep't of Labor & Indus.*, 121 Wn.2d 513, 518, 852 P.2d 288 (1993). The word "shall" in a statute is presumptively imperative and operates to create a duty. *Crown Cascade, Inc. v. O'Neal*, 100 Wn.2d 256, 261, 668 P.2d 585 (1983). Whether an ordinance creates a clear duty to act is a question of law we review de novo. *River Park Square, LLC v. Miggins*, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001).

The language in RCW 90.58.210(1) and CCC 35.01.130(2) is not ambiguous. McColl correctly states that the Shoreline Management Act is to be interpreted broadly to give full effect to its objective and purpose, to protect the shorelines. RCW 90.58.020, .900. However, McColl's legal interpretation of the statute and ordinance is incorrect. The "shall" language he references relates to the prosecutor's office's duty to bring actions it deems necessary. It does not mandate the prosecuting attorney's office to take action regardless of its prosecutorial discretion.

A writ of mandamus is appropriate where the plaintiff shows there is a clear duty to act and the duty is ministerial, not discretionary. *Seattle Times Co. v. Serko*, 170 Wn.2d 581, 588-89, 243 P.3d 919 (2010). Prosecuting violations of the law is generally recognized as a "highly discretionary" act. *Walker*, 124 Wn.2d at 411. Interpreting the statute and ordinance in the manner McColl suggests would remove a prosecutor's discretion to act. Based on a plain reading of the statute and ordinance, the prosecutor's office has discretion to take action against a violation of the Shoreline Management Act when it determines it is necessary to ensure the shoreline's

protection. McColl did not establish that the prosecutor had a clear duty to act; therefore, he cannot satisfy the first element for obtaining a writ of mandamus. Because Clallam County had no duty to act, we do not reach the issue of whether McColl had another adequate legal remedy. McColl is not entitled to a writ. The trial court properly granted summary judgment for Clallam County.

III.    PROPERTY RIGHT TO A VIEW

McColl argues that he was denied access to damages because he has a property right to a particular view. He claims this right exists by way of case law, statute, and the U.S. Constitution. We disagree.

A.    PROPERTY RIGHT THROUGH CASE LAW

McColl first argues that the trial court's grant of summary judgment in favor of Anderson unjustly denied him his right to sue for damages. His argument focuses on the loss of damages; however, he seems to also contend that a conclusion of law in *Dep't of Ecology v. Pacesetter Constr. Co.*, 89 Wn.2d 203, 571 P.2d 196 (1977), creates a cause of action. He states, "An illegal and un-permitted shoreline structure, as is the case here, *Ecology v. Pacesetter*, and *Hunt v. Anderson*[, 30 Wn. App. 437, 635 P.2d 156 (1981)], that blocks a valuable view, allows a Plaintiff to pursue the violator for damages." Br. of Appellant at 11-12. McColl seems to argue that he has a property right to a particular view of the lake and that the trial court prohibited him from enforcing this right.

In *Pacesetter*, our Supreme Court considered whether a section of the Shoreline Management Act violated the takings clause of the state constitution. 89 Wn.2d at 205. The court quoted one of the trial court's conclusions of law in the case stating, "If one house sits far ahead of the others, then for that one person's financial benefit, he would be allowed to cause a drastic invasion into the aesthetics of the neighborhood and a tremendous financial loss to all of his

neighbors." *Pacesetter*, 89 Wn.2d at 208. McColl argues that this conclusion of law entitles him to damages. McColl takes the quote out of context; the conclusion of law articulated in *Pacesetter* does not establish a separate cause of action that would entitle McColl to damages in this case.[7] McColl cites no other authority to support his claim.

McColl alleges that the "judge in this case here refused to read or acknowledge the Plaintiff's citation to this conclusion of law in open court or to address the conclusion of law in his written opinions and memorandum although the Plaintiff repeated[ly] demanded he do so." Br. of Appellant at 11. The trial court judge did not disregard *Pacesetter*, but instead disagreed with McColl's interpretation. The conclusion of law in *Pacesetter* did not create a cause of action for McColl and his claim is not otherwise supported by citation to case law; therefore, his argument is without merit. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (we do not consider arguments that are unsupported by citation to the record or authority).

    B.    STATUTORY AND CONSTITUTIONAL RIGHT TO A VIEW

McColl also argues that the Clallam County Code and the Shoreline Management Act grant him a property right to pursue damages. He contends that because he relied on zoning ordinances when he purchased his property, he has a right to the view that he expected on purchase.

Generally, there is no property right to a view across a neighbor's property. *Collinson v. John L. Scott, Inc.*, 55 Wn. App. 481, 485, 778 P.2d 534 (1989). However, a zoning ordinance can create a property right. *Asche*, 132 Wn. App. at 797-98; *see also Veradale Valley Citizens' Planning Comm. v. Bd. of County Comm'rs of Spokane County*, 22 Wn. App. 229, 232, 588 P.2d

---

[7] McColl also cites *Hunt v. Anderson* in which the court analogizes to *Pacesetter*. *Hunt*, 30 Wn. App. at 440-41. McColl states that *Hunt* "restates" the conclusion of law in *Pacesetter*. Br. of Appellant at 11. This assertion is incorrect. The court in *Hunt* affirmed the trial court's order to move a mobile home where the trial court had found a specific violation of the Shoreline Management Act. *Hunt*, 30 Wn. App. at 442. There has been no such finding in this case.

750 (1978). "A property right is protected by the United States Constitution when an individual has a reasonable expectation of entitlement deriving from existing rules that stem from an independent source such as state law." *Asche*, 132 Wn. App. at 797. In *Asche*, a specific zoning ordinance existed to regulate building height and building over the specific height would be approved only if it did not impact neighboring views. *Asche*, 132 Wn. App. at 798. This zoning ordinance created a property right. *Asche*, 132 Wn. App. at 798. No such view easement exists here.

McColl argues that a level boathouse deck and a screen atop said boathouse deck violate the Clallam County Code Shoreline Management Program because it requires a sloped roof on boathouses. He cites CLALLAM COUNTY SHORELINE MASTER PROGRAM § 5.18(C)(1)(d) at 64 (rev. June 16, 1992), which states, "Where permitted, boathouses shall have sloped roofs with a minimum pitch of 3:1 (horizontal to vertical)."

First, during the motions hearing, McColl informed the trial court that the privacy screen and the floats are "the only two things we're looking for for damages and everything else is outside the Statute of Limitations. I have conceded that and put that into my reply." RP at 17. Thus, McColl waived his argument relative to the boathouse. Second, the section McColl cites relates to boathouses and not the regulation of removable bamboo screens; therefore, it is not applicable to McColl's appellate claim.[8] The two parties do not disagree on the material facts. The trial court properly applied the law to the facts of this case and Anderson was entitled to a judgment as a matter of law. Summary judgment was proper.

_____

[8] The parties seem to disagree as to whether the Shoreline Management Program is an ordinance. Based on our resolution, that the provision cited by McColl is inapplicable, we need not decide the issue.

IV.     ISSUE WAIVED –WARRANT OF ABATEMENT FOR NUISANCE

McColl states that the court erroneously dismissed his nuisance claim and request for a warrant of abatement under RCW 7.48.020. A warrant of abatement may be issued by the superior court if after complaint or action, a person is adjudged guilty of a nuisance. RCW 7.48.260.

For an issue to be considered on appeal, an appellant must raise the issue in the assignments of error, present an argument on the issue, and provide some legal citation. RAP 10.3(a)(3); *Olson*, 126 Wn.2d at 320-21. An appellant waives an issue when he fails to argue it in his appellate brief. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809. If the argument is laid out for the first time in the reply brief, it is too late to warrant consideration. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

Apart from a general assignment of error and issue statement, McColl fails entirely to lay out an argument for warrant of abatement for nuisance. McColl generally assigns error by stating that the trial court erred "in dismissing the Plaintiff's entire case without applying the applicable statutes, codes, and case law that grant the Plaintiff access to . . . warrant of abatement." Br. of Appellant at 4. However, McColl mentions warrant of abatement in only one place in the argument section of his brief. It is in a footnote and only by reference to the section of the RCW. He also does not argue nuisance law in his brief. Because he does not argue this issue and does not provide legal citation to support his claim, we do not consider it.

V.      ATTORNEY FEES

RAP 18.1 provides for attorney fees and costs on appeal if "applicable law grants to a party the right to recover" and the fees and costs are properly requested in the parties' opening briefs. RAP 18.1(a)-(b). A party requesting attorney fees must "devote a section of its opening brief to the request for the fees or expenses." RAP 18.1(b). Under the Shoreline Management Act, RCW

90.58.230 provides for reasonable attorney fees to the prevailing party. The prevailing party is only entitled to fees directly associated with the Shoreline Management Act claims. *Cowiche Canyon Conservancy*, 118 Wn.2d at 823.

Anderson was granted attorney fees at the trial court level and in his response brief on appeal, again requests the same. Anderson identified attorney fees as an issue in his brief and devoted a section to his request; thus, as the prevailing party, Anderson is entitled to attorney fees incurred from defending the Shoreline Management Claim only.

We affirm both orders granting summary judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Johanson C.J.

12